UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TOMMY LYNN CRABB, | ) | 1:05-CV-00941 SMS HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT |
| | ) | TO ENTER JUDGMENT |
| JAMES A. YATES, Warden, | ) | |
| | ) | ORDER DECLINING ISSUANCE OF |
| Respondent. | ) | CERTIFICATE OF APPEALABILITY |
| | ) | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented in this action by Gregory H. Mitts, Esq. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), this case was assigned to the undersigned for all purposes, including entry of final judgment.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction on November 8, 2000, by plea of no contest to possession of methamphetamine for sale in violation of Cal. Health & Saf. Code § 11378. (CT 152[1].) Petitioner also admitted two strike priors pursuant to

---

[1] "CT" refers to the Clerk's Transcript on Appeal.

1  California's Three Strikes law. (LD 3 at p. 2[2].) On February 7, 2001, the trial court dismissed the
2  older of the two strike priors and sentenced Petitioner to six (6) years in state prison. (LD 13 at p.
3  19.)

4        The government filed a notice of appeal to the California Court of Appeals, Fifth Appellate
5  District (hereinafter "Fifth DCA"), challenging the trial court's dismissal of the prior. On
6  September 10, 2002, the Fifth DCA issued an unpublished opinion reversing the trial court's
7  dismissal of the prior and finding the trial court had abused its discretion in striking the 1976
8  manslaughter conviction. (LD 3.) The appellate court directed the trial court to re-sentence Petitioner
9  in accordance with its opinion. (LD 3 at p. 7.) On May 20, 2003, the trial court re-sentenced
10 Petitioner pursuant to the Three Strikes law for a total indeterminate term of 25 years to life. (LD 16
11 at p. 119.) Petitioner appealed to the Fifth DCA, and the judgment was affirmed. (LD 8.)

12       Petitioner filed a petition for review in the California Supreme Court. (LD 9.) The California
13 Supreme Court denied the petition on July 21, 2004. (LD 10.)

14       On July 15, 2005, Petitioner filed the instant federal petition for writ of habeas corpus in this
15 Court. Petitioner presents the following grounds for relief: 1) Petitioner claims the original sentence
16 imposed by the trial court, although lenient, was authorized under the applicable law and constituted
17 an appropriate exercise of the trial judge's sentencing discretion; and 2) Petitioner claims the Fifth
18 DCA's ruling imposing a proportionality requirement finds no basis in either the United States or
19 California Constitutions. On January 9, 2006, Respondent filed an answer to the petition. Petitioner
20 did not file a traverse.

21       **FACTUAL BACKGROUND**[3]

22       On January 2, 2000, the vehicle Petitioner was driving was having trouble and he pulled to
23 the side of the road. California Highway Patrol Officer Jennifer Osland approached Petitioner to see
24 if there was a problem. Upon approaching him, Osland noticed an odor of alcohol and Petitioner
25 became nervous and started sweating. Petitioner admitted to Osland that he had a prior conviction

---

[2]"LD" refers to the documents lodged by Respondent with his answer.

[3]The facts are derived from the factual summary set forth by the Fifth DCA in its opinion of July 22, 2004, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). (LD-10 at 2-4.)

for manslaughter, and Osland searched him for weapons. During the search, Osland felt something the size of a golf ball in Petitioner's pocket. Osland asked Petitioner what was in his pocket and he told her it was crank. He was arrested and three other golf ball sized items were found in Petitioner's pants, as well as approximately $2,700 cash.

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

1 application of, clearly established Federal law, as determined by the Supreme Court of the United
2 States" or "resulted in a decision that was based on an unreasonable determination of the facts in
3 light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,
4 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

5      As a threshold matter, this Court must "first decide what constitutes 'clearly established
6 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
7 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court
8 must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time
9 of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly
10 established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by
11 the Supreme Court at the time the state court renders its decision." Id.

12      Finally, this Court must consider whether the state court's decision was "contrary to, or
13 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
14 *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the
15 writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
16 question of law or if the state court decides a case differently than [the] Court has on a set of
17 materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.
18 "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state
19 court identifies the correct governing legal principle from [the] Court's decisions but unreasonably
20 applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

21      "[A] federal court may not issue the writ simply because the court concludes in its
22 independent judgment that the relevant state court decision applied clearly established federal law
23 erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A
24 federal habeas court making the "unreasonable application" inquiry should ask whether the state
25 court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

26      Petitioner has the burden of establishing that the decision of the state court is contrary to or
27 involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,
28 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,

Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petition**

### A.  Procedural Background[4]

Petitioner pled no contest to possession of methamphetamine for sale and admitted two "strike" convictions. The trial court struck Petitioner's 1976 manslaughter conviction and sentenced him to a three-year term, doubled to six years for the remaining strike.

On appeal by the People, the appellate court held that the trial court abused its discretion in striking the manslaughter conviction. The appellate court found Petitioner to be a "classic 'revolving door' criminal," and noted he had "either suffered a criminal conviction, been in prison or committed a parole violation nearly every year since 1972. Including the current conviction, he . . . had 12 felony and 10 misdemeanor convictions. Since the 1976 manslaughter conviction, Petitioner committed manslaughter for a second time in 1983, as well as multiple other crimes including assault and possession of narcotics, and . . . violated parole five times. Moreover, as noted by the trial court, Petitioner's current conviction was not a simple possession but 'what can only be characterized as a commercial distribution of drugs.'" The appellate court found no extraordinary circumstances by which Petitioner could be deemed to fall outside the spirit of the Three Strikes law and, based on his criminal history, determined the trial court abused its discretion in so finding. Accordingly, the Fifth DCA reversed the order striking Petitioner's 1976 manslaughter conviction and remanded the matter "to the trial court to make a determination on Petitioner's *Romero* motion consistent with this opinion."

---

[4] The procedural background is taken from the Fifth DCA's 2004 appellate opinion. (LD 8 at pp. 2-5.)

Upon remand, Petitioner presented a favorable psychological evaluation, together with testimony from correctional officers and other witnesses concerning his good character for nonviolence, attitude, and prospects since his initial sentencing. Defense counsel pointed out that the appellate court did not direct the trial court to deny the *Romero* motion, but rather to reassess whether it should be granted, taking into consideration the views expressed in the opinion. Counsel asked that the court consider everything presented in the initial sentencing hearing together with the evidence adduced upon remand, and to find that Petitioner fell at least in part outside the spirit of the three strikes scheme and, accordingly, strike at least one of the prior manslaughter convictions. The prosecutor countered that, given Petitioner's extensive criminal history, the evidence presented by the defense was insufficient to constitute the extraordinary circumstances required to remove Petitioner from the spirit of the Three Strikes law.

When the trial court specifically asked whether the opinion required it to impose a sentence of 25 years to life in prison or whether it had "some modicum of discretion," the prosecutor opined that the prior opinion did not "leave a great deal in the way of discretion" given the description of Petitioner as a classic revolving-door criminal. Defense counsel argued that while the appellate court found nothing in the record as it stood at the time of the initial sentencing to support the conclusion that Petitioner was other than a violent criminal, limited discretion existed to consider the newly-presented evidence and find that it dispelled the showing of violent proclivities and established the extraordinary circumstances necessary for a finding that a career criminal falls outside the spirit of the three strikes scheme.

In ruling on the *Romero* motion, the trial court stated in part:

> . . . . This Court has to re-evaluate that position and self limit the exercise of that discretion and has to be very cautious not to do so in such a manner that I mechanically simply go back and administerial [sic] adopt the opinion of the court of appeals . . . .
>
> So Court needs to consider and consider with some degree of skepticism, I suspect the evidence that was presented that deals with circumstances regarding [Petitioner] subsequent to this event, and while the Court can obviously consider and did consider the facts and circumstances of the prior conviction, the nature of his record, all of those things at the prior hearing; Court has been told that most favorably considered to Petitioner, that was insufficient, I have to really look at what has happened since that time in order to consider whether or not there is a basis on which the Court can and in the appropriate exercise of its discretion, strike one or both of the strike priors.

1    The trial court then proceeded to review the evidence before it, in part observing that "we . . .
2 need to understand that the structure of the three strikes law is not simply to take care of violence or
3 propensity to violence but also to deal appropriately with recidivism where there is a likelihood of
4 reoffending by a defendant now or in the future and to prevent that by a longer period of
5 incarceration." The court found no evidence that Petitioner, despite his good performance in prison,
6 had necessarily eliminated his propensity for future criminal conduct, and stated: "[U]nfortunately
7 for [Petitioner], this Court cannot at this point in time come to the conclusion that a sufficient
8 amount of new circumstances, new evidence, new basis or additional basis exists that would at least
9 bring this situation to the point that this Court could exercise discretion without abusing it in light of
10 the analysis of the court of appeal. I'm under the circumstances of this, court must in this court's
11 view based on that opinion, deny the renewed Romero Motion based on additional evidence that has
12 been presented. That being said, the Court has no discretion at this point other than to impose the
13 sentence recommended initially by probation and consistent with the law . . . ." The court then
14 sentenced Petitioner to 25 years to life in prison.

15   **B.  Ground One**

16    In his first claim for relief, Petitioner alleges the trial court's original sentence was authorized
17 under the applicable law and constituted an appropriate exercise of the trial court's sentencing
18 discretion. Petitioner claims there was ample support for the original sentence in California case law.

19    As Respondent correctly argues, this claim is entirely one of state law. Petitioner cites only
20 state law in support of his claim, and he does not claim a violation of the Constitution or federal law,
21 except as it relates to his second claim for relief. Issues of state law are not cognizable on federal
22 habeas and must be dismissed. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many
23 times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v.
24 Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J.,
25 concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation,
26 may not be corrected on federal habeas").  In addition, Federal courts are bound by state court rulings
27 on questions of state law, Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493
28 U.S. 942 (1989), and "the availability of a claim under state law does not of itself establish that a

claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989). Therefore, the claim should be dismissed.

### C.  Ground Two

Petitioner next alleges the ruling of the appellate court imposed a proportionality requirement which finds no basis in either the United States or California constitutions. Respondent first argues the claim is unexhausted in that the petition was presented to the California Supreme Court in a petition for review without first presenting it to the appellate court.  Nevertheless, the Court may deny the claim on the merits even if the claim is unexhausted. 28 U.S.C. § 2254(b)(2).

To the extent Petitioner alleges a violation of the California constitution, the claim is not cognizable for the reasons stated above.  As to Petitioner's challenge on the basis of the federal constitution, the claim is completely without merit as there is in fact a proportionality requirement inherent in the Eighth Amendment. Petitioner cites to Harmelin v. Michigan, 501 U.S. 957 (1990), for the conclusion that the Eighth Amendment does not contain a proportionality requirement. Respondent correctly argues Petitioner has misread Harmelin for this proposition. As Respondent notes, five justices in Harmelin opined that the Eighth Amendment contains a "narrow proportionality" or "gross disproportionality" principle. 501 U.S. at 996-1009, 1012, 1027.

In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court recently discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. Id. at 72.  Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow."  Id.  The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.

In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court again reviewed the Supreme Court's Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Id. at 23.

Therefore, it is clear that Petitioner does not raise even a colorable federal claim in arguing there is no basis for a proportionality principle in the Eighth Amendment. In addition, it is clear Petitioner's sentence is not disproportionate to his offense. In Ewing, the Supreme Court conducted a proportionality review of Ewing's sentence, stating, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long *history of felony recidivism*." Id. at 29 (emphasis added).  The Court noted that "any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." Id. In imposing a Three Strikes sentence on a recidivist criminal, the Court recognized the state's interest in dealing "in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." Id., *citing* Rummel v. Estelle, 445 U.S. 263, 276 (1980)).  Accordingly, any proportionality review must take this interest into account.  Id.

Here, Petitioner's sentence of 25 years to life does not raise an inference of gross disproportionality to his crimes.  Petitioner received a sentence of 25 years to life with the possibility of parole for having been convicted of possessing methamphetamine for purpose of sale and for having two prior violent felony convictions for manslaughter.  As noted by the California Court of Appeal, Petitioner has an extensive criminal history. The Fifth DCA found Petitioner to be a "classic 'revolving door' criminal," and noted he had

> either suffered a criminal conviction, been in prison or committed a parole violation nearly every year since 1972. Including the current conviction, he . . . had 12 felony and 10 misdemeanor convictions. Since the 1976 manslaughter conviction, Petitioner committed manslaughter for a second time in 1983, as well as multiple other crimes including assault and possession of narcotics, and . . . violated parole five times. Moreover, as noted by the trial court, Petitioner's current conviction was not a simple possession but 'what can only be characterized as a commercial distribution of drugs.'

(LD 8 at p. 2.)  In light of Petitioner's current offense and his extensive history of felony recidivism,

his sentence does not raise an inference of gross disproportionality. The petition must be denied.

**IV.  Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>     (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>     (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial

U.S. District Court
E. D. California            cd                                                    10

1 showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a
2 certificate of appealability.

## ORDER

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

2) The Clerk of Court is DIRECTED to enter judgment for Respondent; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:     June 27, 2008**                                   **/s/ Sandra M. Snyder**
                                                        UNITED STATES MAGISTRATE JUDGE